DEBORAH R. SILLINS, M.D., AN INDIVIDUAL, PLAINTIFF V. DANIEL T. NESS, M.D., INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; PIEDMONT PLASTIC SURGERY CENTER, A NORTH CAROLINA CORPORATION, DEFENDANTS

No. COA03-697

(Filed 15 June 2004)

**Arbitration and Mediation— application of federal or state statutes—initial determination—burden of proof**

The trial court's denial of defendants' motion for arbitration was remanded for determination of whether the arbitration clause was governed by the Federal Arbitration Act or the N. C. Uniform Arbitration Act. If neither the FAA nor the UAA governs, the court has no authority to compel arbitration. Defendants have the burden of establishing that the arbitration clause is enforceable because they are the party seeking to compel and are required to submit evidence that the contract involved interstate commerce.

Appeal by defendants from orders entered 8 January 2003 and 24 January 2003 by Judge Jesse B. Caldwell, III in Gaston County Superior Court. Heard in the Court of Appeals 3 March 2004.

*Caudle & Spears, P.A., by Harold C. Spears; and Arcangela M. Mazzariello, for plaintiff-appellee.*

*Van Hoy, Reutlinger, Adams & Dunn, by Craig A. Reutlinger and Stephen J. Dunn, for defendants-appellants.*

GEER, Judge.

Defendants Daniel T. Ness and Piedmont Plastic Surgery Center appeal from the trial court's order denying their motion to compel arbitration of plaintiff Deborah R. Sillins' claims. Because the trial court did not specifically address whether the arbitration clause at issue is governed by the Federal Arbitration Act or by the North Carolina Uniform Arbitration Act, we are compelled by *Eddings v. Southern Orthopedic & Musculoskeletal Assocs.*, 356 N.C. 285, 569 S.E.2d 645 (2002) to remand this case to the trial court for an initial determination of that question.

## Facts

Plaintiff, Dr. Sillins, is a plastic surgeon. While she was completing a fellowship at UCLA, Dr. Ness, the president of Piedmont Plastic Surgery Center ("Piedmont"), recruited her to move from California to Asheville to work for Piedmont. On 21 May 1999, plaintiff entered into an employment contract with Piedmont. The employment contract contained the following arbitration clause:

> 17. Arbitration. Any controversy or claim arising out of, or relating to this Agreement, or the breach thereof (except for the Employer's right to enforce the restrictive covenant and seek remedies pursuant to paragraph 13 above) shall be settled by arbitration in Gaston County, North Carolina, in accordance with the arbitration rules and procedures of the American Arbitration Association.

Dr. Sillins was employed by Piedmont from 2 August 1999 until approximately 23 September 2001, when she was fired.

Dr. Sillins filed suit in Gaston County Superior Court asserting various claims arising out of her employment and her termination. Defendants moved to dismiss the complaint, to compel arbitration of any actionable claims, and for sanctions. After plaintiff voluntarily dismissed certain claims, the trial court entered an order denying defendants' motion. Defendants filed a motion for reconsideration of that order, which the court also denied.

## Discussion

Defendants assigned error only to the trial court's denial of their motion to compel arbitration. Although that order is interlocutory, it is immediately appealable as it affects a substantial right. *Howard v. Oakwood Homes Corp.*, 134 N.C. App. 116, 118, 516 S.E.2d 879, 881

SILLINS v. NESS

[164 N.C. App. 755 (2004)]

("The right to arbitrate a claim is a substantial right which may be lost if review is delayed, and an order denying arbitration is therefore immediately appealable."), *disc. review denied*, 350 N.C. 832, 539 S.E.2d 288 (1999), *cert. denied*, 528 U.S. 1155, 145 L. Ed. 2d 1072, 120 S. Ct. 1161 (2000).

Plaintiff contends that the arbitration clause is unenforceable under the North Carolina Uniform Arbitration Act ("UAA"). N.C. Gen. Stat. § 1-567.2(b)(2) (2003) provides that the UAA does not apply to "[a]rbitration agreements between employers and employees or between their respective representatives, unless the agreement provides that this Article shall apply."[1] Before, however, a court may consider whether the UAA would render the parties' arbitration agreement unenforceable, it must determine whether the Federal Arbitration Act ("FAA") applies. That question is critical because the FAA preempts conflicting state law, including any state statutes that render arbitration agreements unenforceable. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272, 130 L. Ed. 2d 753, 763, 115 S. Ct. 834, 838 (1995) (because the FAA preempts state law, "state courts cannot apply state statutes that invalidate arbitration agreements"). Plaintiff does not dispute that if the FAA applies, then the parties' arbitration agreement is enforceable.

The FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1994). The FAA includes within its scope employment contracts with the exception of those covering workers engaged in transportation. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 151 L. Ed. 2d 755, 765-66, 122 S. Ct. 754, 761 (2002).

In deciding the applicability of the FAA, the dispositive question is whether the employment agreement at issue is a "contract evi-

---

1. This statute was repealed effective 1 January 2004. It remains applicable to agreements to arbitrate made prior to that date. 2003 N.C. Sess. Laws ch. 2003-345, § 1.

dencing a transaction involving commerce[.]" 9 U.S.C. § 2. *Eddings* directs that the trial court must specifically make this determination. 356 N.C. at 286, 569 S.E.2d at 645, *adopting per curiam*, 147 N.C. App. 375, 386, 555 S.E.2d 649, 656 (2001) (Greene, J., dissenting). This Court may not resolve the question for the first time on appeal. *Id.*

In *Eddings*, the plaintiff was a Tennessee physician who moved to Asheville and signed an employment agreement containing an arbitration clause with the defendant medical group. He sued the medical group seeking rescission of the agreement. The trial court denied the medical group's motion to compel arbitration, and the group appealed. A divided panel of this Court held that because the agreement evidenced a transaction in which the plaintiff crossed state lines to begin practicing in North Carolina, the arbitration clause was governed by the FAA. *Id.* at 383, 555 S.E.2d at 654.

Judge Greene dissented on the ground that it was impossible for this Court to make the initial determination whether the transaction in the case involved interstate commerce and, therefore, fell within the scope of the FAA. *Id.* at 385, 555 S.E.2d at 656. Judge Greene observed that whether a contract evidenced "a transaction involving commerce" within the meaning of the FAA is a question of fact that an appellate court should not initially decide. *Id.* He then reasoned:

> With the exception of the fact plaintiff was in Tennessee before moving to Asheville to join [the medical group], there is no evidence in this case that the transaction involved multiple states. Indeed, the record to this Court is devoid of any evidence the [employment agreement] or plaintiff's employment "involve[d] interstate commerce and [is] within the scope of the FAA." Although this Court "may speculate on what may have been the nature of the performance required by the contract, it is impossible for us to determine on appeal whether the [FAA] applies" due to the contract in question involving interstate commerce. Accordingly, I would remand this case to the trial court for the initial determination of whether the [employment agreement] involved interstate commerce.

*Id.* at 385-86, 555 S.E.2d at 656 (quoting *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Comm'n*, 387 F.2d 768, 772 (3d Cir. 1967)). The Supreme Court reversed the decision of this Court for the reasons stated in Judge Greene's dissenting opinion. *Eddings*, 356 N.C. at 286, 569 S.E.2d at 645.

This case is indistinguishable from *Eddings*. While plaintiff argues that defendants failed to request formal findings and, therefore, "it is presumed that the judge made the determination based upon proper evidence[,]" *House Healers Restorations, Inc. v. Ball*, 112 N.C. App. 783, 786, 437 S.E.2d 383, 385 (1993), *Eddings* nonetheless appears to require an express determination by the trial court of the applicability of the FAA.

Defendants have argued that no remand is necessary because the arbitration agreement is enforceable under state law as well as under the FAA. Defendants acknowledge that employment agreements, such as the one at issue here, are excluded from the scope of the UAA when the UAA is not specifically referenced within the agreement. N.C. Gen. Stat. § 1-567.2(b)(2). Defendants urge, however, that even if an arbitration agreement falls outside the scope of both the FAA and the UAA a trial court is still required to compel arbitration. North Carolina law holds otherwise. In *Skinner v. Gaither Corp.*, 234 N.C. 385, 386, 67 S.E.2d 267, 269 (1951), our Supreme Court first noted that when an arbitration agreement is not a contract to arbitrate under the UAA, then "the common law rule applies." Applying the common law rule, the Court then held: "It is settled law in this jurisdiction, as in most others, that when a cause of action has arisen, the courts cannot be ousted of their jurisdiction by an agreement, previously entered into, to submit the rights and liabilities of the parties to arbitration or to some other tribunal named in the agreement." *Id.* at 386-87, 67 S.E.2d at 269. In short, if neither the FAA nor the UAA (nor any other statutory provision) governs an arbitration agreement, then a court has no authority to compel arbitration. *Id.* at 387, 67 S.E.2d at 269 ("In an action on the [arbitration agreement] the courts will not decree specific performance of the agreement. Neither will they, by indirection, compel specific performance by refusing to entertain a suit until after arbitration is had under the agreement."). *See also Cyclone Roofing Co. v. David M. LaFave Co.*, 312 N.C. 224, 232, 321 S.E.2d 872, 878 (1984) ("As long as the statutory requirements of the [UAA] have been met . . ., a court must order arbitration on motion of a party to the contract.").

Because the question whether the FAA or the UAA governs this arbitration agreement determines whether the trial court properly denied the motion to compel arbitration, we must, in accordance with controlling precedent in *Eddings*, reverse and remand the case to the trial court to decide whether the employment agreement evidenced a transaction involving interstate commerce. In making that determina-

tion, the trial court must apply the principles announced in *Allied-Bruce*, 513 U.S. at 273-74, 130 L. Ed. 2d at 764, 115 S. Ct. at 839. Under *Allied-Bruce*, the FAA's term "involving commerce" is considered the functional equivalent of "affecting commerce." *Id.* It is broader than the term "in commerce" and "signals an intent to exercise Congress' commerce power to the full." *Id.* at 277, 130 L. Ed. 2d at 766, 115 S. Ct. at 841. With respect to the meaning of "evidencing a transaction," the Court read the Act's language "as insisting that the 'transaction' in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Id.* at 281, 130 L. Ed. 2d at 769, 115 S. Ct. at 843.

We observe that defendants have the burden of establishing that the arbitration clause is enforceable. *Tohato, Inc. v. Pinewild Mgmt., Inc.*, 128 N.C. App. 386, 393, 496 S.E.2d 800, 805 (1998) (when a party seeks to compel arbitration, he must first establish his right to that remedy). *See also Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 581 (2004) ("Defendants, as the parties seeking to compel arbitration, held the burden of proof."). As a result, defendants were required to submit sufficient evidence in support of their motion to compel arbitration to establish that plaintiff's contract evidenced a transaction involving interstate commerce. *See Am. Gen. Fin., Inc. v. Morton*, 812 So. 2d 282, 284-85 (Ala. 2001) ("The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction substantially affecting interstate commerce."). Here, defendants offered no evidence in support of their motion to compel arbitration apart from the employment agreement attached to plaintiff's complaint.[2]

Reversed and remanded.

Chief Judge MARTIN and Judge HUDSON concur.

---

2. Their only attempt to present evidence on this issue came when they filed their motion for reconsideration. Defendants have not, however, assigned error to the trial court's denial of that motion.